All right, that brings us to Fernandez-Miniet v. U.S. Attorney General. And we will hear first from Mr. Militello. Thank you, Your Honors. Good morning. May it please the Court, Ross Militello on behalf of the petitioner, Mr. Aleyander Fernandez-Miniet. There are two grounds, two independent grounds for remand that I'd like to address. The first one is the agency's failure to conduct a pattern and practice analysis as required by 8 CFR 1208.13b.2, 3 remand. And the second one is the agency's failure to enforce the Department of Homeland Security's threshold burden removal proceedings to prove alienage pursuant 8 CFR section 1240.8c. After the party's completed briefing in this incident case, the Court published Martinez v. U.S. Attorney General 992 Federal 3 1283, which governs this incident case, I believe. Just like Martinez, the agency failed to conduct a pattern and practice analysis when they ignored material evidence and disregarded parts of that applicant's claim. In Martinez, this Court found such error to be indicative and proof of the agency's failure to give reasoned consideration to this element of asylum eligibility. The petitioner has, in this case, similar to Martinez, alleged that the agency failed to review the evidence of his claim of pattern and practice. You've alleged that to us, but you didn't raise that before the BIA, did you? No, I didn't. No. Well, actually, Your Honor, I do believe he did. I believe the one thing he did do before the BIA was press upon the board that there actually were reasons related to his political opinion as to why he would be persecuted in the future. And you think that's enough to raise pattern and practice? I believe so. I don't think this Court should limit it to a recitation of the words pattern and practice. Do you have a supporting decision that that's sufficient? Yes, Your Honor. I think the Court said that it doesn't require, exhaustion doesn't require, or doesn't require a full briefing on the issue, but simply that the issue is raised and it gives the board an opportunity to weigh in on the issue. I believe that was expressed in... So we look at the board record and determine whether or not that was sufficient to bring it to the attention of the board. Yes, Your Honor. I think you look at the board record. I think you look at the notice of appeal, where he's even providing even more, he's even providing reasons that the immigration judge never got to that was in his statement provided to the court and also in a lot of the corroborating evidence that was completely ignored that he was a member of a political party or he was perceived to be a member of a political party. An opposition political party in Cuba. All that was ignored and all of that was his attempt to make the claim that in the future he's going to be persecuted because like other people who are dissidents against the government on political issues, who are perceived to be part of Mpaku, who even in his case, he was raised and never addressed right at the end when they're talking about internal relocation, that he is of Asian heritage. I know that there's no evidence in the record of his face, but having been somebody who's met the man via video, he is one of the individuals in Cuba who is of mixed race heritage and is part Chinese, I believe, according to him. So that issue was completely not addressed and he continually raised it to the immigration judge, to the board, and at the end of the day, your honor, he is a pro se asylum respondent and there's no, the immigration judge has to go through his own agency's own regulations and see that this is one of the material aspects of an asylum claim. He's explaining his fear of persecution in Cuba based on his political opinion and the immigration judge, you know, who's supposed to have, who the agency gets all this deference because of agency expertise, well their expertise is part and parcel part of the country conditions in these countries people are applying from asylum from and to require exhaustion to be something that requires a detained pro se asylum applicant to be able to read the regulations, understand the regulations, and call the regulations to the attention of the immigration judge who's ostensibly doing this several times a day. Having to do that to the board as well on briefing seems to be a too strong a reading of the exhaustion statute. It couldn't have been Congress's intent when they the exhaustion statute into 1252. That would just essentially, if you don't give them attorneys and you detain them in rural Georgia far from attorneys and you do their cases within four or five months of them even being detained and shipped across the country, if you have an additional requirement that they need to be able to be at the same level as the agency, it just creates a system where the regulations don't mean anything. What's your best authority or decision for the proposition that there's a different standard of review or a different requirement for raising issues before the BIA for a pro se petitioner as opposed to a counsel? Well you did and this court's jurisprudence about exhaustion you talk about the court talks about if there's no excuse if there's no there it's not a blanket bar. Yeah but was that a case in which there was a pro se petitioner and you said we wouldn't and the court said that might not have cut it for somebody represented by counsel but we're going to allow it because this guy didn't have an attorney? No I believe that was Amaya your honor and Amaya. I didn't see any of that in your brief and I was asking if you had some authority. No your honor I think the difference there is Amaya was I believe he was pro se when he and then for the first time alleged a due process violation as the judge the judge had bias against me he did that for the first time within the 11th circuit he wasn't identifying any particular term of art or any particular regulation that was violated that something a lawyer would do or that the agency experts would do he was saying something kind of the due process violation a fundamental fairness problem that was just kind of general and I think there you don't need any special there's no agency expertise in fairness whether evidence is that's not part of their expertise they get deference on that because they're fact finders the pattern of practice and asylum law and the application of their regulations that's really within the wheelhouse of the agency and to you know I know there's there's there's in this court not a direct precedent uh saying that a pro se person before the board gets any leniency on exhaustion but there is an opening for the court to say that based on Amaya and it's in repeated statements that it's not a blanket bar um uh to uh to exhaustion it's not exhaustion not a blanket bar to raising claims that uh weren't raised previously I have a question about the about the record Mr. Militello what what happened with the documentary evidence that the petitioner tried to submit did that make it into the record I have no idea your honor I have as much view of review of the administrative record as the at the immigration judge at the trial court or at the board of immigration appeals but you're you're you're familiar with the record of course yeah I've seen the administrative record but it's disjointed it's out of chronological order um it's not clear what was marked the immigration judge never marked this stuff he only marked the I-589 the form and the NTA which is uh you know uh only two exhibits in an asylum hearing being marked um pretty clear evidence that he didn't review the record um uh you know you don't know if it's in the record or not well it's in the admin it's in the administrative record so it's before this court that the agency reviewed it otherwise the agency wouldn't have put it in certified administrative record when it got in there I don't know the respondent might be able to answer that better than I can um especially because they were ones that received the certified administrative record and maybe have insight in how it was compiled but uh as far as I know it was before the agency the agency just never reviewed it which is what's our argument now if it's well we put it in the admin record but we didn't act it wasn't actually in the record we just put it in the administrative record now but it really wasn't before the agency I wouldn't know how to address that myself your honor without knowing exactly if that's the case it's never been asserted that these that these that these documents weren't actually before the agency even though we included them in certified administrative record to this court all right counsel um you've reserved five minutes for rebuttal we'll hear from you good morning may it please the court abigail leach for the attorney general um so I I would like to start um by first pointing out uh the pattern and practice claim um was not exhausted before the agency um and it should have been exhausted before the agency as opposing counsel uh just stated the pattern of practice and the development of the record is within the wheelhouse of the agency accordingly where the board this court is held where the board can provide a remedy it should be raised on appeal to the board um secondarily the the documents are in the record um they are stamped as being received on november 19th 2019 and I believe they begin at um page 203 in the record um maybe around there 203 204 but those are the ones during his immigration proceedings that he said he had submitted in support of his bond um and they had nothing to do with his um claim for relief for protection um before the immigration judge um so can I direct your attention to a different issue um we have some case law in our circuit where we have found that where there's a credible death threat by a person who has the there are several times when the petitioner said that um it was threatened to him that he would be disappeared which seems to me to be a death threat um and not only to him but to his mother I guess after he left and I'm wondering uh it seems to me that the that the IJ found credible so why why wouldn't that then be something that we have to consider when we're determining whether there was persecution it also appears that although the IJ noted this in the facts the IJ did not specifically discuss this issue I believe your honor is referring to the case of Diallo with the credible threats uh being able to be immediately carried out in that case the petitioner was at a meeting for the opposing political party that he attended with his father and his brother when the opposing political party guards armed guards broke up the meeting and began to arrest the people that were at the meeting when a fight broke out and then the armed guards began shooting people one of those people was petitioner's brother um thereafter petitioner was beaten and held and then threatened and told that he would be killed in the morning after being registered and listed here petitioner was arrested um and detained for a number of days and then he was released with a warning um and a threat of disgrace and that happened on two occasions he didn't suffer any serious injury um and this court has jurisprudence and I believe in Granada Gonzalez that says without any evidence in the record to show that um those of being carried out um that doesn't establish persecution um that's in contrast to Diallo where I'm sorry to interrupt but just to make sure I understand I mean the problem here is the IJ doesn't say that there's no evidence that these threats were intended to be carried out in fact he finds he finds that um the petitioner had a subjective fear that they would be carried out and he doesn't say anything about you know whether he doesn't talk at all in his discussion about these death threats is that I mean isn't that an issue here is there some reason why we shouldn't send it back to him to address how the death threats factor into the totality of the circumstances I would I would put that toward the well-founded fear argument and here petitioner petitioner testified that there's no outstanding warrant there's no outstanding criminal charges there's no evidence in the record whatsoever to show that anybody is still looking for him to target him for persecution upon his return although he did receive the threats in the past um and in fact he testified being able to leave um Cuba on his own passport by presenting himself at the airport and leaving legally so there really is no evidence in the record to show that he established an objectively reasonable fear of future harm to show that he he himself would be singled out for persecution in the future should he return to Cuba um and with respect to his past persecution claim again he was he did not suffer serious injury although he did so sorry just um I have one question about that I thought that the IJ addressed only past persecution and did not address future persecution but maybe I missed it where in the record did he talk about past I'm sorry about future persecution the the board um discussed that the board affirmed the immigration judge's finding that he failed to establish the well-founded fear of future persecution on account of his political opinion um and they said that although that uh he did fear in the future it was speculative and not supported by any record evidence there was nothing in the record to show that he himself would be targeted for future harm um where did the IJ say that the board cites to the immigration judge's decision at four I don't have it right in front of me okay that's fair enough thanks okay um uh again to the to the extent petitioner argues in his opening brief that a serious injury is not required um he he misstates this court's prudence to establish persecution while a serious injury is not required this court does require a showing of threats combined with other forms of serious mistreatment um and to the extent petitioner cites to de santa maria that petitioner um she she was uh she she was um assaulted near her home she was dragged out of her car by her hair she was threatened a number of times she was struck and beaten by individuals identifying themselves as opposition to the political party um she was traumatized by the torture and murder of her groundskeepers so these are extenuating severe circumstances that are in addition to although she did not establish serious harm these are things that are combined as a totality with the threats of harm that she received those are not present in this case um petitioner again was arrested on two occasions although he did sustain a laceration to his head he didn't he didn't require medical treatment for that and he was released with a warning um i'd like why why are you not discussing martinez i was i was decision uh there were threats that they would quote do unimaginable things to him he would be tortured uh then on another occasion he would threaten he could be tortured jailed or they could make him disappear uh and uh he had the aggravating circumstance of he was beaten and the last blow caused him to fall lose consciousness for a number of minutes created a laceration on his head so forth and so on in all those circumstances the panel held that that wasn't sufficient persecution and your honor i was about to go there so i appreciate you bringing it up and so those this case doesn't um although it's a similar uh fact pattern the extenuating circumstances are just not present as they are in martinez he was seized by cuban um he was fired from three jobs uh kicked out of a neighboring town these are even more extenuating circumstances and petitioner has alleged or shown um in either his case before the agency or in his opening brief to this court um in this case there's also i believe there's also evidence that while he was being detained he was deprived of food and water and that the um the police made threats to his family and also interfered with his livelihood by shutting down his sale of fruits and vegetables how do we factor those elements into the analysis here again uh the economic as this court described in martinez economic harassment does not constitute persecution as he was martinez was fired from three jobs as a waiter um and the threats to the family again there's no evidence that they would carry them out but petition petitioner also received threats to his family as well martinez and throughout in other cases this court has held that those um that harm does not rise to the level of persecution um so substantial evidence supports the agency's finding that petitioner failed to establish uh harm in the past which rose to the requisite level of persecution or that he established a well-founded fear of future persecution um and this court um should then find substantial evidence holds upholds that finding um where a petitioner fails to establish um asylum on the merits and on the where the withholding of removal claim is based on the same facts he necessarily also fails to meet his burden as the claim for withholding of removal requires a higher burden of proof to establish eligibility for that relief similarly petitioner failed to establish eligibility for cat protection and the agency properly determined that he failed to establish it was more likely than not he would face torture if removed to cuba um and this court should find that substantial upholds that decision and just to return to the um exhaustion requirement the court lacks jurisdiction to to review the petitioner's unexhausted assertion that the immigration judge um violated his due process rights where he failed to raise them in the first instance um before the board um uh pursuant to a usc 1252 d1 uh and amaya artun duaga um if the if the court doesn't have any other questions um council i do actually sorry um so i see that you're right that the ij did actually find that he hadn't shown an objectively reasonable fear of future harm but what i don't really see is much of an explanation to explain why and um maybe you can help me with that the the board explained that there's a lack of documentary evidence to support his speculation that anybody seeks to harm him um in order to establish a well-founded fear of future persecution a petitioner is required to show both a subjective and an objective fear of future harm in order to show an objective fear of future harm they have to allege specific objective facts that are going to establish or show that petitioner has a good reason to fear that he will be harmed in the future being targeted for harm there's nothing in the record to show other than petitioners sincerely held belief uh that he will be harmed upon return there's no um documentary evidence to support his claim um so he did not establish a well-founded fear of future persecution in this case um where does the analysis of the of the ij discuss this uh you know i don't i again i don't have the immigration judge's opinion right in front of me but i do see that the board cited to the opinion at four um again this court um reviews the immigration judges and the board's decision to the extent the board adopts and affirms or adds to its own opinion the court reviews both decisions uh again the attorney general requests that this court dismiss in part and deny in part the petition for review thank you counsel mr militello thank you your honor um at the outset i just want to bring to the court's attention its case um the case of indra wadi um that's from 2015 uh its precedent decision where the court found that a uh um a reason consideration it when the agency let the agency decision lacks reason consideration that argument doesn't need to be exhausted uh to the agency um much like what's been argued here which is they just ignored evidence they've they've not engaged in a whole part of the analysis that is required by law these are things you can't raise ahead of time otherwise you're requiring people to remind the agency of what its job is to do that day and that's not what exhaustion requires it's it's to raise any dispute about about the issue if the judge had found no pattern in practice and it wasn't contested then that wouldn't have been exhausted but there was just a complete absence of anybody addressing this individual's claim of future persecution the agency completely just dismisses entire claim based on the fact that it found that what the harm in the past didn't rise to it didn't rise level of persecution and then continue to call any idea future persecution speculative despite the evidence despite his finding credible um and and uh they didn't do it that any reasoning um as it has been pointed out um that's the error that it was was complained about in the opening brief and and that's the error this court needs to address and can even if it finds it wasn't exhausted to the agency because it's an issue that can't be exhausted to the agency um additionally um i'd like to point out that uh the the uh the issue of of um the the the immigration judge not giving um not requiring the department to sustain its burden in the beginning um these are also arguments that can't be made um at that time um by the by the applicant if he's never given the rights if he's never given advisals of the nta he's never explained the process and the burdens and what's expected of him and the government he has no ability to actually participate and and have any of the rights afforded to him enforced when when a regulation is promulgated for the benefit of a defendant or or in this case an asylum applicant and the government violates that regulation it's presumed prejudicial there's a reason the government put in these protections in the first place and to just ignore them on an ad hoc basis um is not only inappropriate but it's a little frightening um additionally um the the the um that error can't be exhausted um or that if that court finds that to be error the only way to remedy this is to restore the uh uh restore the petitioner to the position he was at the time the violation occurred which was prior to pleadings being taken prior to the nta being sustained and this court should order new rule proceedings to be conducted so that the um he has the actual opportunity to to participate in his proceedings the way congress and even the agency itself intended for him to be able to do um as to judge rosenbaum's points about harm rising to the level of persecution um i think you know i i i think there is an issue where if this court raises the if this court allows the board because this court didn't say that it that didn't rise a little persecution it said it didn't result so it's not it it's not that that would never meet persecution it's just that the agency didn't create any error but by leaving the standard that flexible and allowing the agency to raise the standard of persecution that high and then not requiring them to enforce their own regulations 1208 13 b23 romanette which is an affirmative obligation onto if you read the plain language the regulations affirmative obligation oh it's affirmative prohibition on the attorney general to require evidence of being singled out for future persecution if there is a pattern in practice of people uh of of certain groups of people and the applicant is a member of that group if if we don't require them to even do that on their own or to even include that in their decisions and then allow them to raise past the standard of persecution so high that it requires someone to go through years-long troubles um and have people murdered close to them to be able to pass persecution claim and then future persecution requires being singled out you're going to wind up deporting whole groups of people that would normally been covered by asylum law and the refugee protocols that came after the holocaust you know we always look at my cases is is if we're going to send back jewish people to nazi germany because nothing's happened to them yet and there's no evidence they're going to be singled out that's that's an error in interpretation of the of the asylum laws that congress could not have attended such a result and here that's what would have what would be happening if we apply what the what the agency did to my client thank you counsel all right i think we have your case and we will be in recess for the rest of today thank you